IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

CHRISTY WELCH, as Administrator
ad Litem for the Estate of Manual
Shannon Overman, Deceased,
    Plaintiff,

VS.

DANNY WOODS, HAVEN JONES,
LEIANN WOODS,
    Defendants

No. _____

JURY TRIAL DEMANDED

## COMPLAINT

Comes now the Plaintiff, Christy Welch, by and through her attorney of record Leanne A. Thorne, and alleges the following:

### JURISDICTION AND VENUE

1. At all times relevant, Manual Shannon Overman (hereinafter "Decedent") was an inmate at the Henderson County Jail in Lexington, Henderson County, Tennessee.

2. The Decedent passed away on or about January 1, 2023, while in the custody of the Henderson County Jail. Plaintiff was named Administrator ad Litem of the Estate of Manual Shannon Overman on January 11, 2023. *See* Order Appointing an Administrator Ad Litem, attached as Exhibit 1.

3. At all times material hereto, Defendant Danny Woods was a correctional officer at the Henderson County Jail, and was acting by virtue of his position, under the color of state law and in the course and scope of his employment with the Henderson County Jail. Defendant Danny Woods is sued in his individual capacity.

4. At all times material hereto, Defendant Haven Jones was a correctional officer at the Henderson County Jail, and was acting by virtue of her position, under the color of state law and in the course and scope of her employment with the Henderson County Jail. Defendant Jones is sued in her individual capacity.

5. At all times material hereto, Defendant Leiann Woods was a supervisory correctional officer at the Henderson County Jail, and was acting by virtue of her position, under the color of state law and in the course and scope of her employment with the Henderson County Jail. Defendant Woods is sued in her individual capacity.

6. Each and all of the acts of Defendants involved in this incident were performed under the color and pretense of the constitutions, statues, ordinances, regulations, customs and usages of the United States of America and the State of Tennessee, under color of law, by virtue of their authority and in the course and scope of their contractual obligation and/or employment.

7. The incidents which give rise to this cause of action occurred within this Court's jurisdiction, and within one year of the filing of this Complaint.

8. Venue is proper pursuant to 28 U.S.C. § 1391, as all the Defendants are residents of this district and/or all the acts or omissions which give rise to this cause of action occurred within this district and division.

9. Jurisdiction is proper in this Honorable Court pursuant to federal question jurisdiction, 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3) and (4) and 42 U.S.C. § 1983.

## FACTS

10. Paragraphs 1 through 9 are incorporated as if fully rewritten herein.

11. Plaintiff became incarcerated on or about November 10, 2020, at the Henderson County Jail and was housed as a pre-trial detainee at the time of his death.

12. On or about December 31, 2023, the Decedent was housed in A pod of the Jail in cell 517.

13. Approximately two (2) days prior, inmate Darryl Smith ("Inmate Smith") was booked into the Henderson County Jail.

14. During the booking process, inmates are to be searched for contraband, including illicit drugs.

15. After booking, Inmate Smith was placed in A pod where Overman was housed.

16. In the early morning hours of January 1, 2023, Correctional Officers were alerted to respond to the Decedent in A pod due to his disturbing behavior.

17. Correctional Officers Austin Frost ("Frost") and Tony Conway ("Conway") responded and noted that Overman was paranoid, delusional, and hallucinating.

18. In response, they removed Overman from A pod and took him to booking to be placed under "medical observation" due to his "physical and mental behavior."

19. It was suspected at that time that Overman was under the influence of an illegal substance causing his behavior and that his condition required closer and more frequent monitoring.

20. "Medical observation" at the Henderson County Jail entails monitoring the inmate on fifteen-minute intervals.

21. Defendants Danny Woods and Jones were assigned to the booking area during the overnight shift spanning December 31, 2022, and January 1, 2023.

22. Among the booking officers duties were to monitor inmates in one-man observation cells located in the booking area on the required frequency.

23. Both Defendants Danny Woods and Jones were aware that the Decedent was being placed in booking under a "medical watch," and they both personally observed his paranoid and delusional behavior.

24. Frost and Conway relayed the concerns about Overman's condition and suspected exposure to an illegal substance to their Sergeant, Leiann Woods ("Sergeant Woods").

25. In response, Defendant Leiann Woods instructed Frost and Conway to search A pod for contraband.

26. Although no contraband was found in the search, Frost and/or Conway learned that Inmate Smith had provided the Decedent methamphetamine.

27. Frost and/or Conway additionally suspected during their investigation that Inmate Smith and another inmate in A pod were also under the influence of drugs.

28. Once placed in the booking cell, Cell 262A, the Decedent persisted in his hallucinations and delusions; specifically, he believed that another inmate Coby Bailey was going to shoot him and he was in fear for his life and yelled for help repeatedly.

29. Despite the Decedent's obvious intoxication and declining condition, none of the Defendants called the on-call medical provider or any other medical provider for help.

30. At some point over the following hours, the Decedent passed away.

31. The Decedent's death, however, was not noticed by either Defendant Danny Woods, Leiann Woods, or Jones; instead, the oncoming booking officer, Patric Albritton, for the shift beginning at 6:00 a.m. on January 1, 2023, observed the Decedent lying face

down with his arms under his stomach and non-responsive to verbal stimuli at approximately 5:50 a.m.

32. Correctional Officer Albritton instructed Defendant Jones to unlock the door and, upon entry, he discovered the Decedent cold, with purple extremities and face, and stiff.

33. Although Albritton attempted cardiopulmonary resuscitation along with other life-saving measures, they were not successful.

34. Emergency medical personnel responded at approximately 6:10 a.m. and the Decedent was pronounced dead.

35. Despite the requirement to do so, no medical observation log was contemporaneously completed on the Decedent from the time of his placement in the booking cell at approximately 1:05 a.m. until after his death at approximately 6:00 a.m.

36. Upon information and belief, there were no face-to-face observations of the Decedent by any Defendant after 4:19 a.m.

37. After supervisors were called to the scene and asked to produce the medical observation log, it was discovered that one was not done; instead, the log was completed retroactively by Defendant Danny Woods, and contained entries that were not consistent with surveillance video of the cell.

38. The Decedent's cause of death was determined to be acute methamphetamine toxicity.

39. The Defendants' failure to properly monitor the Decedent or call for medical care for his toxic exposure to methamphetamine smuggled into the Henderson County Jail resulted in the Decedent's death.

## 42 USC § 1983 CLAIMS – SURVIVAL ACTION

### *Failure to Protect*

40. Paragraphs 10 through 39 are incorporated as if fully rewritten herein.

41. At all times relevant, the Decedent was incarcerated at the Henderson County Jail and, because he was in their custody, the facility assumed a duty to protect him from known serious risks to his health and safety.

42. Defendants knew the Decedent was vulnerable to overdose and/or injury due to his prior involvement with drugs as evidenced by jail records maintained at the Henderson County Jail and/or the pervasive drug smuggling problem within the facility.

43. Defendants knew that the introduction of drugs into the Henderson County Jail by inmates was a significant and pervasive problem, as well as inmates using and overdosing on drugs within the facility.

44. In fact, as of the day of the Decedent's death, a preliminary investigation noted that no less than four (4) individuals had smuggled drugs into A pod of the Henderson County Jail and allegedly sold those drugs to the Decedent.

45. Defendants ignored their knowledge and did not do anything to curb the introduction, spread, and usage of dangerous drugs in the Henderson County Jail, despite their direct knowledge of widespread introduction and drug use there.

46. The Defendants inadequately searched inmates being booked into the Jail, thus allowing drugs to be brought into the Jail and abused by inmates in custody there.

47. Defendants' refusal to act constitutes deliberate indifference to the Decedent's vulnerable state.

48. Defendants' actions and inactions constitutes a violation of the Decedent's

rights under the Fourteenth Amendment to the United States constitution to be free from cruel and unusual punishment, which resulted in his death.

*Reckless Disregard to a Serious Medical Need*

49. The Defendants have, under color of state law, deprived the Decedent of rights, privileges and immunities secured by the Fourteenth Amendment to the United States Constitution, including but not limited to the right to be free from cruel and unusual punishment, the right to be protected, and the right to adequate medical care while incarcerated.

50. The Defendants failed to follow prescribed protocols, including proper monitoring of his medical condition, and to call medical personnel when needed to evaluate a potentially life-threatening condition, specifically, drug overdose.

51. A phone call to the on-call medical provider was a simple and authorized task that any correctional officer could take without a supervisor's permission.

52. Knowing the Decedent was likely intoxicated and exhibiting the acute onset of symptoms of toxic methamphetamine exposure, the Defendants failed to monitor him and make contemporaneous record the time and results of those observations as required for an intoxicated inmate under "medical observation." The Defendants, and each of them, recklessly disregarded the Decedent's obvious serious medical need, methamphetamine toxicity, and failed to call any medical personnel for assessment, treatment, or medical orders.

53. Knowing that the Decedent had been placed under "medical observation" and segregated, the Defendants' failure to call the designated health care provider as soon as

practicable violated the minimum standards implemented by the Tennessee Corrections Institute.

54. As a result of the foregoing acts and omissions of the Defendants, the Decedent suffered and died.

WHEREFORE, the Plaintiff prays as follows:

a. For a jury to try the issues when joined.

b. For the entry of judgment against the Defendants for compensatory and special damages in an amount proven at trial including but not limited to damages for pain, suffering, mental and emotional distress.

c. For an award of punitive damages.

d. For costs, expenses, and attorney's fees for this action in accordance with 42 U.S.C. 1983 and 1988.

e. For an order declaring that the Defendants have acted in violation of the United States Constitution.

f. For an order enjoining the Defendants from engaging in any of the unlawful acts, omissions, or practices complained of herein.

g. For such other and further relief as the court deems just and proper.

Respectfully submitted,

s/ Leanne A. Thorne
Leanne A. Thorne, BPR #023481
P. O. Box 262
Lexington, TN 38351
(731) 968-9810
thornelaw@hotmail.com

STATE OF TENNESSEE
COUNTY OF HENDERSON

    The Plaintiff in the foregoing Complaint personally appeared before me, the undersigned authority, and on her oath stated that the facts and matters set forth in her foregoing Complaint are true, to the best of her knowledge, information and belief.

_____
Christy Welch, as Administrator
ad Litem for the Estate of Manual
Shannon Overman, Deceased

    Sworn to and subscribed before me, this the 25th day of May, 2023.

_____
Notary Public

My commission expires: 4-28-25

# EXHIBIT 1

**IN THE PROBATE COURT OF HENDERSON COUNTY, TENNESSEE**

| | | |
|---|---|---|
| IN RE: | X | |
| ESTATE OF | X | NO. P-2059 |
| MANUAL SHANNON OVERMAN, | X | |
| DECEASED, | X | |

REC'D AND ENTERED
Probate Minute Book 14, page 7
[signature]
Date 1/11/23
C. & M.

### ORDER APPOINTING AN ADMINISTRATOR AD LITEM

This cause came on to be and was heard on the 11th day of January, 2023, upon the Petition of Christy Welch, a resident of Madison County, Tennessee, for her appointment as administrator ad litem for the estate of Manual Shannon Overman, deceased, from all of which it appears that Manual Shannon Overman was a resident of Henderson County, Tennessee, and that the said Manual Shannon Overman died on or about January 1. 2023, in Henderson County, Tennessee; and it further appearing to the Court that there has been no administration of his estate in this Court or any other court, the estate being either insolvent or without assets; and it further appearing that the Petitioner, Christy Welch, desires to pursue a tort claim for the personal injuries of Manual Shannon Overman, deceased, by way of litigation, it being necessary for an administrator ad litem to be appointed for the purpose of filing said action and providing a nominal Plaintiff therefore; and it further appearing to the Court that this Court has the inherent jurisdiction to appoint an administrator ad litem for this limited purpose; and it further appearing that the Petitioner, the first cousin of the deceased, is a fit person to serve as administrator ad litem;

IT IS ACCORDINGLY ORDERED, ADJUDGED AND DECREED that Christy Welch, be, and he hereby is, appointed administrator ad litem of the estate of Manual Shannon Overman, deceased, to serve without bond, upon her qualification with the Clerk of the Court.

This the 11th day of January, 2023.

_____
Clerk and Master

APPROVED FOR ENTRY:

THORNE & THORNE

BY _____
LEANNE THORNE (#023481)
ATTORNEY FOR THE PETITIONER
14A Monroe Ave.
Lexington, TN  38351
Phone (731) 968-9810
Fax (731) 968-9811